445 S.E.2d 197

Sadie COOK, as Committee for Deborah Patricia Cook, an Incompetent, and as Next Friend for Bridget Maureen Cook, Joshua Hobert Cook, and James Johnny Cook, Infants, Plaintiffs Below, Appellees,

v.

The McDOWELL COUNTY EMERGENCY AMBULANCE SERVICE AUTHORITY, INC., and Continental Casualty Company, Defendants Below, Appellants.

No. 21749.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1994.

Decided May 24, 1994.

C. William Davis, Richardson, Jemper, Hancock & Davis, Bluefield, and P. Brent Brown, Carter, Brown & Osborne, Roanoke, VA, for appellees.

David L. Shuman, Jay W. Craig, Shuman, Annand & Poe, Charleston, for appellants.

PER CURIAM:

This is an appeal by the McDowell County Emergency Ambulance Authority, Inc., and by Continental Casualty Company, from a final judgment entered on March 1, 1993, by the Circuit Court of McDowell County in a personal injury action. The circuit court ruled that the plaintiff below, and the appellee in the present proceeding, Sadie Cook, who was acting as committee for her daughter, and as next friend for her grandchildren, was entitled to recover $1,000,000.00 under the underinsured motorist indorsement to an insurance policy issued by Continental Casualty Company.[1] The court also ruled that Ms. Cook was entitled to recover $333,333.33 in attorney's fees over and above $390,000.00 in fees previously paid, and prejudgment interest.

In reaching the conclusion that the appellee was entitled to recover under the underinsured motorist provision, the circuit court, in effect, found that the underinsured motorist indorsement was not subject to the maximum liability limit which was included in the policy to which the indorsement was appended.

On appeal, the appellants claim that the circuit court erred in failing to recognize, and in failing to give effect to, the maximum liability provision in the general policy. They also argue that the court erred in making its attorney fee and prejudgment interest award. After reviewing the questions presented, this Court agrees with the appellants and reverses the decision of the Circuit Court of McDowell County.

On November 16, 1989, the appellee's daughter, Deborah Patricia Cook, and Deborah Patricia Cook's daughter, Bridget Maureen Cook, were passengers in an ambulance owned and operated by the McDowell County Emergency Ambulance Service Authority, Inc. In the course of the ambulance trip, the ambulance swerved and struck two parked automobiles. Deborah Patricia Cook suf-

---

1. Sadie Cook, since she was acting in two capacities, was technically "plaintiffs below" and is presently technically "appellees," but for readability, she will be referred to as "plaintiff" or "appellee" in this opinion.

fered severe head injuries, and her daughter, Bridget Cook, received minor injuries.

On October 31, 1991, the appellee, Sadie Cook, acting in behalf of her daughter, Deborah Patricia Cook, and also acting as next friend on behalf of the infant children of Deborah Patricia Cook, Bridget Maureen Cook, who had been injured in the ambulance, and Joshua Hobert Cook, and James Johnny Cook, instituted the present personal injury action against the McDowell County Emergency Ambulance Authority, Inc., in the Circuit Court of McDowell County. The complaint alleged that driver of the ambulance, Benny Wilson, an employee of the McDowell Emergency Ambulance Authority, Inc., negligently drove the ambulance into the two automobiles and consequently caused severe and permanent injuries to Deborah Patricia Cook.

The original complaint named the McDowell County Emergency Ambulance Service Authority, Inc., Benny Wilson, the driver of the ambulance, and an unidentified "John Doe" driver as defendants. The complaint also named Continental Casualty Company as a party defendant and sought a declaration of coverage under the uninsured and/or underinsured motorist coverage provisions of a policy issued by Continental Casualty Company.

The McDowell County Emergency Ambulance Service Authority, Inc., was, and is, a duly incorporated emergency service organization formed under the provisions of the West Virginia Emergency Ambulance Service Act of 1975, W.Va.Code § 7–15–1, and was, and is, a "political subdivision" as defined by the West Virginia Government Tort Claims and Insurance Reform Act, W.Va. Code § 29–12A–3(c).

Continental Casualty Company was drawn into this action because it had issued an insurance policy to the West Virginia State Board of Risk and Insurance Management for the benefit of the State of West Virginia and its political subdivisions. The policy clearly stated that the maximum payable for a single claim or "occurrence" under the policy was $1,000,000.00.[2] The Board of Risk and Insurance Management, pursuant to its authority under W.Va.Code § 29–12A–16(a), had issued a separate certificate of liability insurance under the policy to the McDowell County Emergency Ambulance Service Authority, Inc. The certificate of liability insurance identified various coverages under which the McDowell County Emergency Ambulance Service Authority, Inc., was an "additional insured", including Indorsement No. 11, an uninsured and underinsured motorist coverage indorsement, which was in full force and effect at the time of the November 16, 1989, accident.[3] The certificate further reiterated the provision of the basic policy that the maximum payable was $1,000,000.00 for each occurrence.[4]

2. The policy stated:
   Regardless of the number of covered "autos," "insured," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
   All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."
The basic policy, in its indorsements, also contained an "Amendment of Limits of Liability," which reiterated that: "Our limits of liability are: *Liability Insurance:* $1,000,000 Each Accident."

3. The uninsured/underinsured motorist indorsement, Indorsement No. 11, provided:
   It is agreed that uninsured/underinsured motorist coverage with limits of $1,000,000.00 each person/$1,000,000.00 each accident for bodily injury and $1,000,000.00 each accident for property damage liability insurance is added to this policy.
Rather importantly, in this Court's view, the section of the policy containing the uninsured/underinsured indorsement also stated that:
   It is agreed that the provisions of the certificate liability insurance issued to each insured West Virginia political subdivision or charitable or public service organization are incorporated into this policy.

4. The first page of the Certificate of Liability issued to the McDowell County Emergency Ambulance Service Authority contained, under the heading "LIMITS OF LIABILITY," the following statement:

   EACH OCCURRENCE. $1,000,000 each occurrence for all coverage combined. This limit is not increased if a claim is insured under more than one coverage or if a claim is made against more than one insured.

Shortly after the complaint was filed in the present action, the parties negotiated a partial settlement under which Continental Casualty Company agreed to pay a lump sum of $890,686.45 and scheduled payments over 360 months in exchange for a total release of the McDowell County Emergency Ambulance Authority and Benny Wilson and a partial release of Continental Casualty Company. Continental Casualty Company was released from liability except for any liability that it might have under the uninsured/underinsured motorist endorsement. The parties, however, reserved the right to litigate the question of whether the uninsured or underinsured motorist benefits payable were subject to the $1,000,000.00 cap contained in the general policy or created coverage beyond the cap.

The settlement entered into by the parties was approved by the Circuit Court of McDowell County, and a payment of $390,000.00 in attorney's fees was authorized from the settlement proceeds.

Following the settlement, the question of whether the appellee was entitled to recover under the uninsured or underinsured provisions of the policy remained open. At a status conference following the settlement, the court ruled *sua sponte* that the appellee was entitled to recover underinsured motorist benefits in excess of the primary liability coverage.

At a later hearing conducted on September 30, 1992, the court again ruled that the appellee was entitled to recover underinsured motorist benefits over and above the liability limit contained in the principal policy. Subsequently, the court ruled that the appellee was also entitled to recover attorney's fees, over and above the $390,000.00 paid pursuant to the settlement agreement. The court also awarded the appellee prejudgment interest, starting from the date of the accident.

The appellants moved to have the judgment order entered by the circuit court set aside. The circuit court denied this motion and entered a final judgment order on March 1, 1993, which allowed underinsured motorist benefits above the $1,000,000.00 limit contained in the principal policy and which also allowed the payment of the additional attorney's fees and prejudgment interest.

On appeal, the appellants claim that the circuit court erred in ignoring the $1,000,000.00 maximum limit of liability provision contained in the policy and in allowing the appellee to recover underinsured motorist benefits above this limit.

■ This Court has rather clearly stated that:

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970).

Syllabus point 1, *Russell v. State Auto Mutual Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992).

■ In the present case, the policy issued by Continental Casualty Company clearly and unambiguously stated that general policy coverage was limited to $1,000,000.00 for each occurrence. However, there is a question as to whether the language of the uninsured/underinsured indorsement (Indorsement No. 11, referred to in note 3, *supra*) creates a liability in excess of the $1,000,000.00 general policy limit or whether it is subject to it.

A close reading of the indorsement shows that its provisions were "incorporated" into the general policy. From the clear meaning of the incorporation language, the Court can only conclude that Indorsement No. 11 was intended by the parties as a part of the general policy, and the clear limit of liability on the general policy is $1,000,000.00. Given this, the Court concludes that the appellee is only entitled to recover $1,000,000.00 and that the circuit court erred in holding that the appellee was entitled to recover in excess of this amount.

■ In reaching this decision, the Court is aware of the language of W.Va.Code § 33–6–31(b), which relates to uninsured and underinsured motorist provisions in insurance policies in West Virginia and which states:

Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased ·by the insured without set-off against the insured's policy or any other policy.... No sums payable as a result of the underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

The Court notes that this statutory section is contained in Chapter 33, Article 6, of the West Virginia Code. Another provision of Chapter 33, Article 6, W.Va.Code § 33–6–10(a), states:

Insurance contracts shall contain ·such standard provisions as are required by the applicable provisions of this chapter pertaining to contracts of particular kinds of insurance. The commissioner may waive the required use of a particular provision in a particular insurance policy form, if he finds such provision unnecessary for the protection of the insured and inconsistent with the purposes of the policy, and the policy is otherwise approved by him.

From this language, the Court concludes that the Legislature did not intend that the strict requirements of W.Va.Code § 33–6–31(b) apply to every policy of insurance issued in the State of West Virginia.

■ Public governmental entities in West Virginia are authorized to purchase insurance under the so-called "Governmental Tort Claims and Insurance Reform Act," W.Va. Code § 29–12A–1, *et seq.* That Act gives governmental entities broad discretion in obtaining insurance. Specifically, W.Va.Code § 29–12A–16(a) provides:

A political subdivision may use public funds to secure insurance with respect to its potential liability and that of its employees in damages in civil actions for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees, including insurance coverage procured through the state board of risk and insurance management. The insurance may be at the limits, for the circumstances and subject to the terms and conditions that are determined by the political subdivision in its discretion.

In *Eggleston v. West Virginia Department of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993), this Court recognized that policies of insurance issued under the Governmental Tort Claims and Insurance Reform Act often are custom-designed policies, and different from the usual form insurance policy issued to the private individual. The Court finds that the policy involved in the present case is a custom-designed policy.

The West Virginia State Board of Risk and Insurance Management, under the terms of W.Va.Code § 29–12A–16(a), is granted broad discretion and powers relating to the procurement of insurance, and this Court believes that when a policy is a custom-designed policy procured by a body subject to the Governmental Tort Claims and Insurance Reform Act, the broad discretion granted the West Virginia State Board of Risk and Insurance Management authorizes that body to incorporate language absolutely limiting liability under the policy, even if such language would ordinarily be in violation of the provisions of W.Va.Code § 33–6–31(b), and the Court believes that that is what was done in the present case.

The Court notes that the appellants also argue that the circuit court erred in awarding the appellee attorney's fees in the amount of $333,333.33. These fees were apparently for the attorney's efforts to collect under the uninsured/underinsured motorist clause. Since this Court has concluded that the appellee is not entitled to collect under that clause, the question is now moot. The Court believes, however, that some discussion is desirable to clarify the issue.

■ · Although in certain instances a plaintiff may recover reasonable attorney's fees in an action against the plaintiff's own insurer where the plaintiff's own insurer has failed to settle a claim in good faith, the decisions on that point have not indicated that a plaintiff's

right to recover attorney's fees extend to a right to recover against a defendant's insurer. *Hayseeds, Inc. v. State Farm Fire and Casualty,* 177 W.Va. 323, 352 S.E.2d 73 (1986); *Aetna Casualty and Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986). *See also, Grove By and Through Grove v. Myers,* 181 W.Va. 342, 382 S.E.2d 536 (1989).

In the *Grove* case, the Court specifically addressed the question of whether the right to recover attorney's fees where there was alleged failure to negotiate a settlement in good faith extended to the right of a plaintiff to recover against a defendant's insurer. The Court concluded that it did not and stated, in syllabus point 5:

> A prevailing plaintiff in a personal injury or wrongful death action is not entitled to recover in that action his or her reasonable attorney's fees from the defendant's liability insurer for its alleged failure to negotiate a settlement in good faith.

It appears that in the present case the Continental Casualty Company was not the appellee's insurer, but was an insurer for the State of West Virginia or for the McDowell County Emergency Ambulance Service Authority, Inc., one of the parties names as a defendant in the present action.

Since Continental Casualty Company was an insurer of the defendant rather than an insurer of the appellee, and since this was a personal injury action, this Court concludes that under the clear rule set forth in syllabus point 5 of *Grove By and Through Grove v. Myers, Id.,* the trial court erred in awarding attorney's fees against the Continental Casualty Company.

Lastly, the appellants claim that the circuit court erred in awarding the appellee prejudgment interest in excess of stated policy limits. Again, this issue is now moot, since the Court has concluded that the appellee is not entitled to recover under the uninsured/underinsured motorist clause.

For the reasons stated, the judgment of Circuit Court of McDowell County is reversed and this case. is remanded to the Circuit Court of McDowell County with directions that the circuit court limit Continental Casualty Company's liability in the present action to the $1,000,000.00 policy limit set forth in the policy issued by it.[5]

Reversed and remanded, with directions.

---

5. The Court believes that the liability of the McDowell County Emergency Ambulance Service Authority has already been resolved by the settlement agreement. The Court notes that the circuit court's order adopting the agreement specifically provided:

> It is to be fully understood that the payments are to be made under the liability coverage insurance provisions of policy number BUA 7007 41 15 35 [the settlement payments] to fully and completely release, acquit, and discharge the McDowell County Emergency Ambulance Service Authority, Incorporated, and Benny Wilson. . . .