482 S.E.2d 218

**Stevie Ray TRENT and Pamela E. Trent, His Wife, Plaintiffs Below, Appellees,.**

v.

**Tammy L. COOK, Defendant Below, Appellee.**

**Continental Casualty Company, Defendant Below, Appellant.**

No. 23077.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 19, 1996.

Decided Dec. 17, 1996.

---

Charles B. Mullins II, Pineville, for Appellees.

John W. Alderman III, Steptoe & Johnson, Charleston, for Continental Casualty Company, defending in the name of Tammy Cook.

Scott S. Segal, Mark R. Staun, John F. Dascoli, Segal and Davis, L.C., Charleston, Barry M. Hill, Gompers, McCarthy, Hill & McClure, Weirton, for Amicus Curiae, The West Virginia Trial Lawyers Association.

WORKMAN, Justice:

This case is before the Court[1] upon the appeal[2] of Continental Casualty Company[3] from the March 8, 1995, final order of the Circuit Court of Wyoming County, denying Appellant's post-trial motions to set aside a jury verdict finding Appellee Stevie Ray Trent forty percent negligent and the tortfeasor, Tammy L. Cook, sixty percent negligent.[4] Appellant argues that the trial court erred in denying its post-trial motion to set aside the jury verdict because: 1) Appellee was not "occupying" the insured vehicle at the time of the accident and is not an "insured" under the terms of the state's insurance policy; 2) Appellee is precluded from coverage pursuant to the workers' compensation exclusion contained in the state's insurance policy or in the alternative, the exclusion operates to reduce the amount of coverage available to him; 3) Appellee elicited no testimony at trial establishing his future medical expenses to a reasonable degree of medical certainty; and 4) Appellant is not required to reimburse Appellee for damages already awarded to him through workers' compensation payments. Based on our review of the record, we find that Appellee was not entitled to underinsured motorist coverage under the state's insurance policy and, accordingly, we reverse the lower court's decision.

I.   Factual and Procedural Background

On March 24, 1992, Appellee, a deputy sheriff for the Wyoming County Sheriff's Department, responded to a one-vehicle accident on Route 97 near Saulsville, West Virginia. Appellee testified that upon his arrival at the scene, he parked his police cruiser on the side of the road and began his investigation of the accident. Almost twenty-five minutes later, while still conducting his investigation, a vehicle driven by Tammy Cook struck and injured Appellee. At the time of the impact, Appellee was standing more than thirty feet away from his cruiser, preparing the accident report. As a result of the accident, Appellee suffered a broken right leg and he was forced to undergo an amputation of his left leg.

Subsequent to the accident, Appellee filed a complaint in the Circuit Court of Wyoming County against the tortfeasor, Ms. Cook, and Appellant, the underinsurance carrier for the State of West Virginia that provided coverage for the Wyoming County Commission

---

**1.** The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

**2.** Appellees filed a petition for rehearing, which this Court granted on September 12, 1996. On rehearing, Appellees and the amicus curiae raise the issue regarding whether the subject insurance policy is a custom-designed policy.

**3.** Continental Casualty Company defended this case at trial in the name of Tammy L. Cook.

**4.** The jury awarded Appellee $200,000 in general damages, $331,196.76 in special damages, and $2,622 for "loss of 38 days sick leave and vacation." The jury awarded nothing to Appellee's wife, Pamela Trent, for her loss of consortium claim. In addition to the jury verdict, Appellee filed a claim for workers' compensation benefits. His claim was ruled compensable and workers' compensation has paid most of his medical bills along with his claim for time lost from work. Appellee's claim for disability benefits was still pending at the time of this appeal.

("county commission"). Appellee settled with Ms. Cook prior to trial for the limits of her liability policy. The action proceeded against Appellant, who defended the action in Ms. Cook's name.

Appellant sought summary judgment on the coverage issue pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, arguing that Appellee was not an "insured" under the terms of the policy since he was not " 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto' " at the time the accident occurred. Arguing that he was "using" the vehicle pursuant to that term's definition in West Virginia Code § 33–6–31(1996), Appellee filed a declaratory judgment action to resolve whether he was an insured under Appellant's underinsured insurance policy. Pursuant to an order dated April 19, 1993, the lower court, ruling on Appellee's declaratory judgment action, found that "[t]he West Virginia Underinsured Motorist Statute provides Deputy Trent was a person using the vehicle with the consent of the 'named insured[,]' " and concluded, as a matter of law, that "[t]he policy of insurance in this case is more restrictive than the statute. Under the terms of the statute, Deputy Trent was using the vehicle and therefore should be covered by the terms and benefits of underinsurance coverage." Appellant objected and excepted to this ruling.

## II. Discussion

### A. Policy Definition versus Statutory Requirements

The first issue we address concerns whether the trial court erroneously concluded that Appellee was insured under Appellant's poli-

cy on the basis that the term insured, as defined within the insurance policy, contravened the statutory language of West Virginia Code § 33–6–31. Appellant argues that underinsured motorist coverage is only invoked if Appellee was "occupying," as that term is defined within the policy,[5] a covered auto when he was hit by Ms. Cook. Appellant maintains that the facts undisputedly demonstrated that Appellee was not occupying his police cruiser at the time of the accident. Appellant further argues that the custom-designed[6] state insurance policy is immune from the requirements of West Virginia Code § 33–6–31. Conceding that he was not "occupying" the police cruiser at the time of the accident, Appellee advocates a liberal construction of the term "use,"[7] as found in West Virginia Code § 33–6–31(c) and as interpreted by this Court, rather than the policy definitions of "insured" and "occupy," based on the remedial nature of the underinsured motorist statute. *See State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990) (stating purpose of W. Va.Code § 33–6–31 is "that the injured person be *fully compensated* for his or her *damages*, not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage"); Syl. Pt. 7, *Perkins v. Doe*, 177 W.Va. 84, 85, 350 S.E.2d 711, 712 (1986) (holding that "[t]he uninsured motorist statute, West Virginia Code § 33–6–31 (Supp.1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose"). Appellee maintains that the policy language is void as against public policy because it is more restrictive than the statutory language. *See* Syl. Pt. 2, *Universal Underwriters Ins.*

---

**5.** The policy defines the term "occupying" as "in, upon, getting in, on, out or off" of the covered vehicle.

**6.** In *Eggleston v. West Virginia Department of Highways*, 189 W.Va. 230, 429 S.E.2d 636 (1993), we recognized that policies of insurance issued under the Governmental Tort Claims and Insurance Reform Act are often "custom designed" and, therefore, differ from the normal insurance policy issued to a private individual. *Id.* at 233, 429 S.E.2d at 639; *see Cook v. McDowell County Emergency Ambulance Service Authority, Inc.*, 191 W.Va. 256, 260, 445 S.E.2d 197, 201 (1994).

**7.** Appellee argues that he was using the vehicle, as that term is defined in West Virginia Code § 33–6–31, because he was utilizing his cruiser as a traffic control device through the operation of the vehicle's emergency lights and its police radio to protect himself and to alert other drivers of the accident's occurrence. In furtherance of this contention, he states that the materials necessary for him to complete his accident report were transported to the scene in the cruiser and were to be returned to said cruiser after the investigation was completed.

Co. v. Taylor, 185 W.Va. 606, 408 S.E.2d 358 (1991); Syl. Pt. 1, *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974).[8]

We begin by examining the pertinent policy provisions in relation to West Virginia Code § 33–6–31. The policy provides, in pertinent part, that the following individuals are considered to be insured for purposes of the policy:

1. You

2. If you are an individual, any "family member"

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto"....

4. Anyone for damages he is entitled to recover because of "bodily injury" sustained by another "insured."

The policy proceeds to define the term "occupying" as "in, upon, getting in, on, out or off" of the covered vehicle. It is undisputed that, under the literal terms of the policy, Appellee was not "occupying" the vehicle at the time of the accident.[9]

■ Since Appellee clearly was not an insured under the express policy terms, Appellee can only secure coverage under the policy if this Court determines that Appellant's policy is not a custom-designed state insurance policy immune from the requirements of West Virginia Code § 33–6–31. *See Cook v.*

*McDowell County Emergency Ambulance Serv. Auth.*, 191 W.Va. 256, 445 S.E.2d 197 (1994). Such a determination would result in Appellant not being entitled to incorporate a more restrictive definition of an insured into the policy than is found in the statutory definition. *See id.*

West Virginia Code § 33–6–31(c) defines "insured" as follows:

the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and *any person, except a bailee for hire, who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above.*

*Id.* (emphasis added). Although the Legislature did not define the term "uses" as it appears in the above-mentioned statute, we discussed the term "use" as it was employed in an "Intentional Acts Exclusion" of an insurance policy in *Baber v. Fortner ex rel. Poe*, 186 W.Va. 413, 412 S.E.2d 814 (1991). Under the terms of the policy, the incident had to "arise out of the 'ownership, maintenance or use' " of a covered vehicle for coverage to apply. *Id.* at 416, 412 S.E.2d at 817. In ascertaining what the term "use" meant, we relied upon the Michigan Court of Appeal's decision in *Detroit Automobile Inter-*

---

**8.** Appellee argues for the first time on appeal that he should be considered a named insured since he is an employee of the county commission. Moreover, Appellee asserted in oral argument that a document entitled "Certificate of Liability Insurance," which was issued by Appellant to Appellee, specifically listed employees of the county commission as named insureds under the policy at issue. That document, however, was not part of the record before the trial court or before this Court and, therefore, we do not consider it in rendering our decision. Furthermore, the "NAMED INSURED ENDORSEMENT" that is in the record clearly establishes that Appellee was not a named insured under the policy provisions.

As we recently noted in *Powderidge Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996), evidence not submitted before the trial court may not be considered by this Court on appeal. *Id.* at 703, 474 S.E.2d at 883 n. 16; *accord O'Neal v. Peake Operating Co.*, 185 W.Va. 28, 32, 404 S.E.2d 420, 424 (1991) (stating that "[t]his court may only

properly consider those issues which appear in the record before us"). Consequently, it is the parties' duty to make sure that all matters relevant to a resolution of the issues on appeal be placed in the record before the lower court so that we may properly consider it on appeal.

**9.** Appellee did not argue before the lower court that the policy provisions regarding who was considered an insured were in any way ambiguous. Consequently, the lower court made no ruling regarding whether the provisions of the policy were ambiguous. As we stated in syllabus point one of *Russell v. State Auto. Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992), " '[w]here the provisions of an insurance policy are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' " *Russell*, 188 W.Va. at 81, 422 S.E.2d at 803 (quoting Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)).

*Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980), which stated that:

'Cases construing the phrase "arising out of the ... use of a motor vehicle" uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. *Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle.* (Citations omitted.) (Emphasis added.)'

*Baber,* 186 W.Va. at 417, 412 S.E.2d at 818 (quoting *Higginbotham,* 290 N.W.2d at 419). Moreover, we noted in *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990), that the phrase was not intended to be restrictive. *Id.* at 592, 390 S.E.2d at 574. Consequently, it is apparent that the term "uses" as it is employed in West Virginia Code § 33–6–31 is less restrictive than the term "occupying" as it is defined within the insurance policy at issue.

The provisions of West Virginia Code § 33–6–31 are not mandatory for every insurance policy issued in this state, as the following language indicates:

Insurance contracts shall contain such standard provisions as are required by the applicable provisions of this chapter pertaining to contracts of particular kinds of insurance. The commissioner may waive the required use of a particular standard provision in a particular insurance policy form, if he finds such provision unnecessary for the protection of the insured and inconsistent with the purposes of the policy, and the policy is otherwise approved by him.

W. Va.Code § 33–6–10(a) (1996).

Relying on the above-mentioned statutory language, as well as our decisions in *Cook* and *Eggleston v. West Virginia Department of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993), Appellant argues that since the policy was issued to a governmental entity pursuant to the Governmental Tort Claims and Insur-

ance Reform Act ("Act"), West Virginia Code §§ 29–12A–1 to –18 (1992), it is immune from the requirements of West Virginia Code § 33–6–31. In *Cook,* two passengers in an ambulance owned and operated by the McDowell County Emergency Ambulance were injured when the ambulance swerved and struck two parked automobiles. One of the passengers sustained severe head injuries, while the other suffered only minor injuries. 191 W.Va. at 257–58, 445 S.E.2d at 198–99. The issue on appeal concerned whether an underinsured motorist endorsement was subject to the maximum liability limit of $1,000,000 for a single claim or occurrence as provided under the terms of the policy.[10] *Id.* at 258–59, 445 S.E.2d at 199–200.

In determining this issue, we examined West Virginia Code § 29–12A–16(a) (1992):

A political subdivision may use public funds to secure insurance with respect to its potential liability and that of its employees in damages in civil actions for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees, including insurance coverage procured through the state board of risk and insurance management. *The insurance may be at the limits, for the circumstances and subject to the terms and conditions that are determined by the political subdivision in its discretion.*

191 W.Va. at 260, 445 S.E.2d at 201 (emphasis added). Based upon this statutory language, we stated that:

[t]he West Virginia State Board of Risk and Insurance Management, under the terms of W. Va.Code § 29–12A–16(a), is granted broad discretion and powers relating to the procurement of insurance, and this Court believes that when a policy is a custom-designed policy procured by a body subject to the Governmental Tort Claims and Insurance Reform Act, the broad discretion granted the West Virginia State

---

**10.** In *Cook,* the parties negotiated a partial settlement under the Continental Casualty Company policy in which Continental agreed to pay a lump sum of $890,686.45. The question raised on appeal focused on whether the underinsured endorsement extended coverage beyond the $1,000,000 cap provided for in the general policy language. 191 W.Va. at 259, 445 S.E.2d at 200.

Board of Risk and Insurance Management authorizes that body to incorporate language absolutely limiting liability under the policy, even if such language would ordinarily be in violation of the provisions of W. Va.Code § 33–6–31(b)....

191 W.Va. at 260, 445 S.E.2d at 201.

We find the *Cook* decision controlling in the instant case. Accordingly, we hold that West Virginia Code § 29–12A–16(a) conveys broad discretion to both the West Virginia State Board of Risk and Insurance Management, as well as governmental entities, with regard to the type and amount of insurance to obtain. Consequently, when an insurer issues a custom-designed policy to a governmental entity pursuant to the Act, that entity may incorporate language absolutely limiting liability under the policy, even if such language would otherwise violate the provisions of West Virginia Code § 33–6–31(b).

### B. Custom-Designed Policy

■ Appellees submit for the first time on rehearing that the policy issued to the county commission "is not a custom-designed tailor-made policy." In *Eggleston*, we recognized that policies of insurance issued under the Act are often "custom designed" and accordingly, differ from the type of insurance policy routinely issued to private individuals. 189 W.Va. at 233, 429 S.E.2d at 639. As we explained in *Eggleston*, the hallmark of a so-called custom-designed policy is that "[i]t [i]s different from the usual insurance policy that is prepared and printed by an insurance company and delivered to the insured, whose only input ordinarily is not as to its language, but as to the amount and type of coverage." *Id.* It is a term of art, perhaps not well chosen in *Eggleston*, because its common usage suggests a sophisticated level of negotiations and specific reasoning that preceded the governmental entity's purchase of the subject insurance contract. The term custom-designed policy actually implies nothing more than a policy whose terms stand in contrast in some manner to those of standardized insurance policies.

■ While there may have been merit to the issue of whether the insurance policy issued to the county commission is truly a custom-designed policy, the parameters of appellate jurisdiction prohibit us from addressing this non-jurisdictional issue: "[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review." Syl. Pt. 6, in part, *Parker v. Knowlton Const. Co., Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975); *accord Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 700, 474 S.E.2d 872, 880 (1996) (noting that Supreme Court's review "is limited to the record as it stood before the circuit court at the time of its ruling"). Without reaching an express finding on the custom-design issue, we conclude only that it is presumptively a custom-designed policy since this issue was never raised below and because the insurance policy is substantially similar to the one analyzed in *Cook* and determined therein to be custom-designed. *See Cook*, 191 W.Va. at 260, 445 S.E.2d at 201.

We recently exhorted in *Parkulo v. West Virginia Board of Probation and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996), that "the text of the applicable insurance coverages afforded, including any applicable contractual exceptions or limitations contained in the policies, should be included in the record at an early stage of the proceedings...." *Id.*, 199 W. Va. at 169, 483 S.E.2d at 515. While the pertinent policy provisions were made a part of the record below, Appellees failed to make any argument while they were before the circuit court regarding the inclusion or exclusion of any policy language that would permit the policy to be designated as custom-designed within the meaning of *Eggleston*. *See* 189 W.Va. at 233, 429 S.E.2d at 639.

Just as we required relevant insurance policy information be promptly made a part of the record in *Parkulo*, we require that any party wishing to challenge the legality of an insurance policy issued to a governmental subdivision, where its terms differ from the general requirements of law, must develop a record at the trial level on the issue of whether the governmental entity chose not to acquire the level of coverage generally re-

quired by law. If such can be demonstrated, then it can properly be characterized as custom-designed within the meaning of *Eggleston.* *See* 189 W.Va. at 233, 429 S.E.2d at 639. Accordingly, we hold that the issue of whether an insurance policy, issued to a governmental subdivision pursuant to West Virginia Code § 29–12A–16(a),[11] is a "custom-designed" policy must be raised, developed and preserved for review at the trial court level.

It is undisputed that the policy was procured by a governmental entity pursuant to the Act. Accordingly, just as the State Board of Risk in *Cook* limited liability by restricting the total amount of coverage to $1,000,000, the State Board of Risk in the instant case acted in accordance with its legitimate powers in limiting the State's liability for underinsurance to individuals "in, upon, getting in, on, out or off" a covered auto, even if the limitation otherwise violated the provisions of West Virginia Code § 33–6–31. Given Appellee's concession that he was not occupying a covered auto at the time of the accident, underinsured motorist coverage is not available under the terms of Appellant's policy and, accordingly, the circuit court erred in its ruling regarding this matter.

C.   Workers' Compensation Exclusion

■   The next issue concerns whether the workers' compensation exclusion in the state's insurance policy also bars Appellee from underinsured motorist coverage in this case. Appellant asserts that the insurance policy excludes coverage for any obligation that either the State of West Virginia or Appellant "may" be held liable for under Workers' Compensation laws. Thus, Appellant maintains that since Appellee has already received workers' compensation bene-

fits for past medical bills and time lost from work and currently has pending a workers' compensation claim for disability benefits, underinsured motorist coverage was excluded under the policy. Appellee, however, argues that there is a sharp split among jurisdictions having underinsured motorist statutes as to whether the workers' compensation exclusion is valid. Appellee maintains that the split centers upon the stated public policy of each respective jurisdiction's underinsured motorist statute. Appellee contends that since stated public policy in West Virginia is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, the exclusion is void as against public policy. *See Youler,* 183 W.Va. at 564, 396 S.E.2d at 745. Further, Appellee asserts that the exclusion is analogous to a policy set off that is expressly prohibited by West Virginia Code § 33–6–31(b).

The express language of the state's policy[12] provides that "[t]his insurance does not apply to ... [a]ny obligation for which the "insured" or the "insured's" insurer may be held liable under workers' compensation, disability benefits or unemployment compensation law or any similar law."[13] Appellee argues that this language contravenes the following proviso of West Virginia Code § 33–6–31(b): "No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." *Id.* Relying on this Court's decision in *Youler,* Appellee argues that the workers' compensation exclusion, in reality, is a set off against the underinsurance benefits that is void as against public policy. *See* 183 W. Va. at 570, 396 S.E.2d at 751.

---

**11.**   West Virginia Code § 29–12A–16(a) permits a political subdivision to

> use public funds to secure insurance with respect to its potential liability and that of its employees in damages in civil actions for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees, including insurance coverage procured through the state board of risk and insurance management. The insurance may be at the limits, for the circumstances and subject to the terms and conditions that are determined by the political subdivision in its discretion.

**12.**   There was no assertion by any of the parties that the above-mentioned policy language was ambiguous. *See supra* note 9.

**13.**   Another exclusion in the policy precludes coverage for bodily injury to "an employee of the 'insured' arising out of and in the course of employment by the 'insured'[.]" Given that the Appellee indisputably is an employee of an insured, this exclusion would also preclude coverage for his claim for underinsured motorist benefits.

In *Youler*, we addressed whether a tortfeasor's liability insurance coverage is to be set off against the limits of the underinsured motorist coverage or, instead, against the injured person's damages. *Id.* at 565, 396 S.E.2d at 746. We examined the following policy provision in relation to West Virginia Code § 33–6–31(b): "'Any amounts otherwise payable for *damages* under this endorsement [on uninsured/underinsured motorist coverage] shall be reduced by all sums paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible.'" *Id.* at 559, 396 S.E.2d at 740 (alterations in original). We concluded that

> *W. Va.Code*, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from ones' own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

183 W. Va. at 570, 396 S.E.2d at 751.

The *Youler* decision is readily distinguishable from the instant case for several reasons. First, *Youler* concerned a set off of mandatory liability coverage against the damages sustained by the injured party rather than what impact a workers' compensation exclusion has on the underinsurance coverage where the injured party was entitled to and did receive workers' compensation benefits. Second, and most important, the policy in *Youler* was not a custom-designed policy issued to a governmental agency; instead, it was a policy issued to private individuals.

As we have previously stated in this opinion, by virtue of the State's insurance policy being custom-designed, a governmental entity may incorporate terms in such a policy absolutely limiting its liability, even where such limitation would otherwise violate the purview of West Virginia Code § 33–6–31. *See Cook,* 191 W.Va. at 260, 445 S.E.2d at 201. The workers' compensation exclusion evinces a bargained for policy that was designed to insure that an injured party is compensated for an injury, yet was also designed to prevent the taxpayers of this state from paying an injured party both workers' compensation benefits and damages through the insurance policy. For these reasons, the lower court should have also denied coverage based upon the workers' compensation exclusion.

Based on the foregoing, we reverse the decision of the Circuit Court of Wyoming County and remand for entry of an order consistent with this opinion.

Reversed and remanded.

RECHT, Judge, sitting by temporary assignment.

CLECKLEY, J., and RECHT, Judge, dissent without reserving the right to file separate opinions.