# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **I.A.**

**No. 20-0587** (Berkeley County 19-JA-67)

## MEMORANDUM DECISION

Petitioner Father L.A., by counsel Christian J. Riddell, appeals the Circuit Court of Berkeley County's July 15, 2020, order terminating his parental rights to I.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Tracy Weese, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he sexually abused I.A.'s sibling, T.R.; erred in considering T.R.'s in-camera testimony; and erred in improperly admitting unqualified expert opinion testimony.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner sexually abused T.R.[3] As alleged by the DHHR, T.R. disclosed that, during one such instance, petitioner put "his private part into her private part and it felt gross." T.R. alleged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner alleges no error in the termination of his parental rights.

[3]Notably, petitioner is not the natural father of T.R. and asserted no parental rights or responsibilities to this child below.

the most recent instance of sexual abuse occurred in December of 2018, when T.R. was eleven years old. According to the DHHR, T.R. had previously disclosed that petitioner sexually abused earlier in 2018. The DHHR interviewed petitioner, and he denied having any sexual contact with T.R. Petitioner waived his right to a preliminary hearing.

The circuit court held adjudicatory hearings in September, October, and November of 2019.[4] Petitioner was called as a witness twice, in September and November of 2019, but he refused to testify, citing "his U.S. Constitution [Fifth] Amendment rights." The mother testified at the September 2019 hearing that T.R. twice alleged that petitioner had been sexually abusing her. However, the mother asserted that she questioned T.R. following the earlier allegations and that T.R. admitted that she had lied. The mother further testified that she did not believe petitioner sexually abused T.R., because she noticed no change in T.R. or in the manner in which T.R. acted toward petitioner. The mother explained that T.R. became rebellious when she turned eleven years old and that the child was angry with her and never liked petitioner, which motivated T.R. to fabricate the allegations. The mother further testified that she and petitioner moved in together in 2016 or 2017. At that time, T.R. was living with a relative and did not come to live with petitioner until 2017, when T.R. was ten and a half years old. The mother detailed the family's general schedule and testified that she did not believe petitioner would have had an opportunity to be alone with T.R. However, the circuit court later found that, based on the schedule the mother provided, "there would have been occasions for [T.R.] and [petitioner] to be alone together."

Also at the September 2019 adjudicatory hearing, a Child Protective Services ("CPS") investigator testified regarding the parties' history of referrals. She stated that in August of 2018, T.R. disclosed that petitioner sexually abused her, but the matter was considered "unsubstantiated" because T.R. did not disclose sexual abuse during a later forensic interview. T.R. was ten years old at the time. Following T.R.'s second claim of sexual abuse by petitioner, the investigator interviewed T.R. in May of 2019. During the interview, T.R. disclosed that petitioner had touched her breasts and her vagina. The investigator noted that T.R. had difficulty narrowing the time frame of abuse, but that T.R. stated petitioner had not abused her since her eleventh birthday, which was in December of 2018. The investigator also testified that T.R. stated that the last time petitioner abused her, he put his mouth on her breasts. T.R. stated that she was in her mother's bedroom at the time and her mother was in the kitchen.

T.R.'s forensic interviewer appeared at the September 2019 hearing and was recognized by the court as an expert in the field of forensic interviewing of juveniles. The forensic interviewer testified that she interviewed T.R. twice, first in September of 2018, and second in May of 2019. The first interview in September of 2018 followed T.R.'s original disclosure of abuse. During the first interview and prior to the typical rapport building between an interviewer and a child, T.R. stated that she was "there to talk about something that she needed to clear up, that she had lied about something," and ultimately recanted the allegation against petitioner that she made in August of 2018. The interviewer noted that T.R. was transported to the September

---

[4]Petitioner and the mother share Spanish as their first language and utilized interpreters throughout these proceedings.

of 2018 interview by her mother and her aunt. The forensic interviewer explained that the validity of forensic interviews can be affected by the person who transports the child to the interview. The forensic interviewer testified that if the mother "did not believe the allegation, [she] would not [have been] an appropriate person to bring the child for an interview."

The forensic interviewer also provided testimony regarding the second, May 2019, interview, during which T.R. detailed the instances of sexual abuse. She disclosed that petitioner first touched her inappropriately when she was seven years old. Specifically, T.R. advised that he touched her breast and her leg. T.R. disclosed "several other instances" of abuse involving touching on the breast and disclosed that there was an incident in which petitioner inserted two fingers into her vagina and that he had "put his private part into her private part" on at least one occasion. T.R. also stated that petitioner tried "to put a balloon in her when she was lying on the bed." The interviewer testified that T.R. was "able to answer concrete questions," but she had difficulty answering abstract questions, putting events in order, weighing time frames, and recalling how many events took place. The interviewer explained that a child's ability to answer questions about when an event took place and how many times an event occurred typically develops between ages ten and twelve, so she was not surprised that T.R., then-age eleven, had difficulty answering those questions. The interviewer believed that T.R. was credible due to the descriptive details she was able to provide.

In October of 2019, a handwritten statement from T.R.'s journal, dated the day after the September 2019 adjudicatory hearing, was discovered and brought before the circuit court. The contents of the statement indicated that T.R. had lied about the allegations of sexual abuse contained in the petition. As a result, the parties agreed to recall some witnesses, and the circuit court determined it was necessary to take T.R.'s in-camera testimony. On November 14, 2019, T.R. testified that her recantation of the allegations in the September of 2018 interview was false, as was the most recent handwritten statement, which stated that she had lied about the May of 2019 sexual abuse allegations. T.R. explained that her mother pressured her to recant the allegations and her aunt pressured her to write the statement. She testified definitively that petitioner had sexually abused her, stating "[h]e did it," which the circuit court found "truthful and compelling, particularly given [T.R.'s] demeanor and emotional presentation." T.R. also testified that the mother visited her at the aunt's home, where she was placed pending these proceedings. T.R. testified that she was told not to tell anyone about the visits and that she complied because "she knew they were going to take her mom away from her." The circuit court referenced the mother's testimony that she went to the kinship placement to visit T.R.'s brother, but avoided contact with T.R. The circuit court found that the mother's testimony was "not credible and [was] false" and that the mother's subterfuge in maintaining unsupervised contact with the children, despite the court's order prohibiting such contact, was "disturbing evidence of her lack of parental protective capacity."

At a hearing on November 15, 2019, petitioner called an expert in forensic psychology to testify as to the "reliability" of T.R.'s disclosures, which the expert stated were based on "the consistency of the individual's statements."[5] The expert opined that T.R.'s narratives were

---

[5]Notably, petitioner failed to include a transcript of this proceeding in the appendix.

"unreliable because of their inconsistency," due to her prior recantations. He explained that an assertion of abuse with a recantation followed by a reassertion is "by definition not reliable." However, the expert also testified that "if [the mother] had been pressuring [T.R.] to recant, [the mother] bringing [the child] to the [September of 2018 Child Advocacy Center] interview would be significant." The expert further noted that the child made no reference to any fear or "physical or emotional sequelae" from the description of intercourse with petitioner. T.R. had described the act in her second forensic interview as "gross and disgusting" without further detail as to how she felt or what she was thinking, which the expert believed departed from the typical child's experience of sexual abuse. However, the expert testified that T.R.'s reaction when describing petitioner putting his mouth on her breast as "ew" or "gross," was proportionate. The circuit court found that T.R. provided sufficient physical and anatomical descriptions related to the alleged sexual intercourse; T.R. described the act as "gross" and "disgusting," and, when asked for a visual description, T.R. stated that "[h]e is big."

A second CPS worker testified that in September of 2019, she received a text from T.R.'s aunt, with whom the children were placed at that time. The worker testified that, based on that text, she believed that T.R was with the mother, which was a violation of the circuit court's orders. The worker testified that, two days later, T.R. told the worker that she had "some bad news" and recanted the allegations raised in the instant petition. According to the worker, T.R. explained that family members had advised her that if she did not say she had lied about the allegations, then she would be taken away from her mother permanently. Thereafter, the DHHR moved T.R. and I.A., out of the relative's home and into foster care, where they stayed throughout the remainder of the proceedings.

In considering the evidence, the circuit court noted that petitioner's refusal to testify in this civil matter could properly be considered "as affirmative evidence of [his] culpability."[6] The circuit court further reiterated that T.R.'s in-camera testimony "was truthful and compelling" and that her "explanation of the inconsistencies appear to arise from [her handwritten journal entry], or otherwise, were not only adequate but completely understandable." The circuit court concluded that petitioner had sexually abused T.R. The circuit court adjudicated the child as an abused child and petitioner and the mother as abusing parents. The circuit court also found that the DHHR was not required to make reasonable efforts to preserve the family unit based upon its finding that petitioner had sexually abused T.R., which constituted aggravated circumstances pursuant to West Virginia Code § 49-4-602(d)(2)(E).

In June of 2020, the circuit court held a dispositional hearing. Petitioner presented no evidence. The circuit court found that petitioner failed to respond to T.R.'s sexual abuse allegations against him "both at adjudication and disposition." Further, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse and, given petitioner's sexual abuse of T.R., it was necessary for I.A.'s welfare to

---

[6]See Syl. Pt. 2, *In re K.P.*, 235 W. Va. 221, 772 S.E.2d 914 (2015).

terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its July 15, 2020, order. Petitioner now appeals that order.[7]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in finding clear and convincing evidence that he sexually abused T.R. He argues that T.R.'s statements regarding sexual abuse were unreliable and not credible. Further, petitioner asserts that T.R. incorrectly described the use of a condom, or "balloon," in that she stated that he attempted to place it "on" her, which further discredits her allegations. Petitioner also asserts that the child's limited description of physical sensation was also incredible. Further, petitioner argues that the circuit court's erroneous findings were supported, in part, by an erroneous application of evidentiary rules. In particular, petitioner argues that (1) the circuit court conducted the in-camera testimony of T.R. improperly, in that the questions asked therein were not consistent with the protocols set forth for CAC interviews, and (2) because, while a transcript of the testimony was provided to the parties, it was not otherwise recorded. Petitioner also argues that the circuit court admitted opinion testimony from T.R.'s forensic interviewer, who was not qualified to serve as an expert witness. We find petitioner is entitled to no relief on appeal.

At the outset, it should be noted that petitioner's brief fails to comply with our Rules of Appellate Procedure. Specifically, petitioner's arguments related to these evidentiary rulings contain numerous citations to a transcript for the November 2019 adjudicatory hearing that was not made part of the appendix record on appeal and also extensively quotes from this transcript in contravention of Rule 10(c)(7), which requires that

---

[7]The mother's parental rights were also terminated below, as well as T.R.'s father's parental rights. According to the parties, the permanency plan for the children is adoption in their current foster placements.

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and now the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs with arguments that . . . do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. According to petitioner, the evidentiary rulings that he now challenges were made during this November 2019 hearing. However, "[t]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review." Syl. Pt. 2, in part, *Trent v. Cook*, 198 W. Va. 601, 602, 482 S.E.2d 218, 219 (1996). Petitioner has failed to show that these evidentiary issues were passed upon by the circuit court or otherwise preserved. Accordingly, we decline to address these rulings on appeal.

In regard to petitioner's argument that the circuit court erred in finding clear and convincing evidence that he sexually abused T.R., we have held that

[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted).

Here, the circuit court found that T.R. provided "truthful and compelling" testimony that petitioner had sexually abused her. T.R.'s allegations were supported by "proportionate" sensory

details related to the sexual acts petitioner perpetrated upon her. Although it is clear that T.R. alleged and recanted the sexual abuse multiple times, the evidence shows that she was pressured to do so by her family members. Indeed, T.R. plainly testified that her aunt made her produce the handwritten journal entry wherein she recanted the allegations of sexual abuse against petitioner. T.R. displayed a fear of losing her mother and was susceptible to pressure elicited from her family members to recant her allegations or risk being taken away from her mother. The circuit court found that T.R.'s "explanation of the inconsistencies appears to arise from [her handwritten journal entry], or otherwise, were not only adequate but completely understandable." Importantly, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we rely on the circuit court's ultimate conclusion that T.R. was a credible witness. Furthermore, petitioner failed to testify and, therefore, failed to rebut T.R.'s allegations.

> "'Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.' Syl. Pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 475 S.E.2d 865 (1996)." Syl. Pt. 2, *In re Daniel D.,* 211 W.Va. 79, 562 S.E.2d 147 (2002).

Syl. Pt. 2, *In re K.P.*, 235 W. Va. 221, 772 S.E.2d 914 (2015). Thus, there is no error in the circuit court's finding that petitioner's silence was "affirmative evidence" of his culpability in this matter. Viewing the record in its entirety, we find that the circuit court did not err in adjudicating petitioner as an abusing parent based on clear and convincing evidence that he had sexually abused T.R.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison