602 S.E.2d 534

**Anthony MIRALLES, III and Madeline Miralles, Plaintiffs Below, Appellants,**

v.

**Lloyd L. SNODERLY, Penelope Sue Zangari, dba P & R Trucking, Inc., a West Virginia corporation, and National Union Fire Insurance Company of Pittsburgh, PA., a corporation, Defendants Below.**

**National Union Fire Insurance Company of Pittsburgh, Pa., a corporation, Defendant Below, Appellee.**

No. 31554.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2004.

Decided June 30, 2004.

---

William L. Frame, Esq., Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, Morgantown, for Appellants.

Ancil G. Ramey, Esq., Jennifer R. Anderson, Esq., Steptoe & Johnson, Charleston, for Appellee.

PER CURIAM:

Anthony Miralles, III and Madeline Miralles, plaintiffs below and appellants herein, appeal an order of the Circuit Court of Monongalia County, West Virginia, which granted summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "National Union"), a defendant below and appellee herein. At issue in this appeal is whether, under the National Union policy issued to Mr. Miralles' employer, underinsurance motorist benefits are available to Mr. Miralles for injuries he received during the course of his employment as the result of the negligence of a third-party tortfeasor and for which injuries Mr. Miralles received workers' compensation benefits.

For the reasons discussed herein, the circuit court's order granting summary judgment in favor of National Union is hereby reversed and this case is remanded for further proceedings.

## I.

### FACTS

Mr. Miralles was employed as a Community Services Specialist with the Northern West Virginia Center for Independent Living (hereinafter "Center for Independent Living"), a non-profit organization.[1] On November 18, 1999, Mr. Miralles was driving his own automobile from meetings he attended on behalf of his employer when he was involved in a serious automobile accident. As a result of the accident, Mr. Miralles sustained grave and permanent injuries.[2] To date, Mr. Miralles has incurred medical expenses in excess of $780,000.00.

Following the accident, Mr. Miralles made claims against Lloyd L. Snoderly, the at-fault driver, and Mr. Snoderly's employer, Penelope Sue Zangari, doing business as P & R Trucking, Inc.[3] Mr. and Mrs. Miralles entered into a settlement agreement with these defendants on or about October 5, 2000, for $1 million, which represents the applicable insurance policy's limits of liability. On or about October 25, 2000, Mr. and Mrs. Miralles also settled their claim for underinsured motorist ("UIM") benefits under their own automobile insurance policy, for $100,000.00. Additionally, Mr. Miralles, whose injuries occurred in the course of his employment with the Center for Independent Living, received workers' compensation benefits.[4]

Eventually, Mr. Miralles sought UIM benefits under the Center for Independent Living's automobile insurance policy, which was purchased from National Union through the West Virginia Board of Risk and Insurance Management (hereinafter "the Board"), pursuant to *W.Va.Code* § 29–12–5 [1996]. More precisely, the Center for Independent Living was issued a "Certificate of Liability Insurance" by the Board pursuant to the insur-

---

1. Both Mr. and Mrs. Miralles suffer from cerebral palsy. According to Mr. Miralles, despite his disability, he was fully independent and managed all activities of daily living before the automobile accident at issue.

2. According to Mr. and Mrs. Miralles, as a result of the accident, which crushed Mr. Miralles' vehicle, puncturing its fuel tank and causing a gasoline fire, Mr. Miralles sustained full thickness burn injuries over one-third of his total body surface. He was hospitalized for approximately four months and sustained extensive scarring and disfigurement on his face, arms, hands, buttocks and thighs. Two fingers on his left hand were amputated and he has undergone more than sixteen surgical procedures. Mr. Miralles

has difficulty walking without assistance, is unable to bathe or dress himself, prepare meals or perform household chores or other activities essential to daily living. Mr. Miralles requires the assistance of an aide and is unable to obtain gainful employment.

3. Mr. Snoderly caused the accident while he was acting within scope of his employment with P & R Trucking, Inc., a trucking and motor freight company.

4. According to Mr. and Mrs. Miralles, they paid the sum of $250,000.00 to the Workers' Compensation Fund in satisfaction of the statutory subrogation lien. *See W.Va.Code* § 23–2A–1 [1990].

ance policy issued to the State of West Virginia. The circuit court found that the subject "policy included 'business auto' coverage with an underinsured [UIM] endorsement." Finding of Fact No. 6, December 4, 2002 Order.[5] The comprehensive business automobile policy issued to the Center for Independent Living included, in relevant part, "West Virginia Uninsured and Underinsured Motorists Coverage":

> We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured' or 'underinsured motor vehicle.'

It is undisputed that Mr. Miralles is an "other insured" as defined in the "Certificate of Liability Insurance" issued to the Center for Independent Living.[6]

The policy at issue also includes Endorsement # 11, "Amendments to Uninsured Motorists and Underinsured Motorists Coverage," which provides:

Section C–Exclusions is amended to add:

[This insurance does not apply to any of the following:]

8. Any obligation for which the 'insured' may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

By letter dated June 22, 2000, National Union, through its authorized representative, AIG Claim Services, Inc., "disclaimed [UIM] coverage" to Mr. Miralles based upon Endorsement # 11, above (hereinafter "the workers' compensation exclusion"). As a result, Mr. and Mrs. Miralles instituted the instant declaratory judgment action in the Circuit Court of Monongalia County for the purpose of determining whether Mr. Miralles is entitled to UIM benefits in this case.

By order entered December 4, 2002, the circuit court granted summary judgment in favor of National Union, concluding, *inter alia*, that because Mr. Miralles received workers' compensation benefits for his injuries resulting from the subject automobile accident, the workers' compensation exclusion in the subject insurance policy clearly and unambiguously precludes Mr. and Mrs. Miralles from also receiving underinsured motorist benefits.[7]

---

5. Endorsement # 1 of the policy, "Named Insured Endorsement," covers, *inter alia*, "Each West Virginia Political Subdivision or Non Profit or For Profit Non Governmental Organizations, covered by Certificates of Liability Insurance on file with the Company."

6. The "Certificate of Liability Insurance" provides that "Other Insureds" under the policy are "[t]he members of the governing body of the Additional Insured named above, its elected or appointed officials, executive officers, directors, commissioners, board members, volunteer workers, student teachers, and employees ... while acting within the scope of their duties as such."

7. In so holding, the circuit court relied on this Court's previous decision in *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996). In *Trent*, a deputy sheriff, while investigating a traffic accident, was seriously injured when he was hit by a passing automobile. The deputy sheriff sought UIM benefits from the insurance carrier for the State of West Virginia that provided coverage for the Wyoming County Commission, his employer. As a threshold matter, the insurance carrier argued, *inter alia*, that the insurance policy, having been issued to a governmental entity under the West Virginia Governmental Tort Claims and Insurance Reform Act ("Governmental Tort Claims Act"), *W.Va.Code* § 29–12A–1, *et seq.*, was a so-called "custom-designed" policy; conse-

quently, the policy was not required to comply with the uninsured and underinsured motorist coverage requirements of *W.Va.Code* § 33–6–31. This Court agreed and held that under *W.Va.Code* § 29–12A–16(a) [1986] of the Governmental Tort Claims Act, the Board and governmental entities have broad discretion

> with regard to the type and amount of insurance to obtain. Consequently, when an insurer issues a custom-designed policy to a governmental entity pursuant to the...Act..., that entity may incorporate language absolutely limiting liability under the policy, even if such language would otherwise violate the provisions of West Virginia Code § 33–6–31(b) (1996).

*Trent*, at syl. pt. 1, in relevant part.

In *Trent*, this Court also addressed whether the workers' compensation exclusion in the State's insurance policy barred the injured deputy sheriff from recovering UIM benefits. Similar to the workers' compensation exclusion at issue in the instant case, the exclusion in *Trent* provided that " '[t]his insurance does not apply to ... [a]ny obligation for which the "insured" or the "insured's" insurer may be held liable under workers' compensation, disability benefits or unemployment compensation law or any similar law.' " *Id.*, 198 W.Va. at 607–08, 482 S.E.2d at 225 (footnote omitted). Having concluded, in *Trent*, that the State's insurance was "custom-

It is from this December 4, 2002 order that Mr. and Mrs. Miralles now appeal.

## II.

## STANDARD OF REVIEW

■ In this appeal, this Court conducts a *de novo* review of the circuit court's December 4, 2002 order granting summary judgment in favor of National Union: " 'A circuit court's entry of summary judgment is reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Glascock v. City Nat. Bank of W.Va.*, 213 W.Va. 61, 576 S.E.2d 540 (2002).

■ Furthermore, whether the workers' compensation exclusion at issue precludes Mr. and Mrs. Miralles from receiving UIM benefits for Mr. Miralles' work-related injuries caused by a third-party tortfeasor because Mr. Miralles received workers' compensation benefits as a result of these injuries involves the interpretation of an insurance contract. In *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998), we reiterated the applica-

ble standard of review in such cases, stating that " '[t]he interpretation of an insurance contract ... is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal.' " (*quoting Payne v. Weston*, 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995).). " 'Language in an insurance policy should be given its plain, ordinary meaning.' Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986)." *Murray*, at syl. pt. 1. Moreover, " '[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." *Murray*, 203 W.Va. at 482, 509 S.E.2d at 6.

## III.

## DISCUSSION

### A.

■ At issue in this appeal is whether the workers' compensation exclusion to the unin-

---

designed" and that, under *W.Va.Code* § 29–12A–16(a) of the Governmental Tort Claims Act, a governmental entity such as the Wyoming County Commission "may incorporate terms in such a policy absolutely limiting its liability, even where such limitation would otherwise violate ... *W.Va.Code* § 33–6–31," *id.*, 198 W.Va. at 609, 482 S.E.2d at 226, we upheld the workers' compensation exclusion as valid and enforceable. However, the injured employee in that case did not argue (and consequently, we did not address) that by its own terms, the workers' compensation exclusion was inapplicable to his claim for underinsurance benefits considering he was injured by a third-party (that is, a stranger to the employment relationship) and not by a co-employee or by his employer. *See* Discussion, *infra*.

Furthermore, Mr. and Mrs. Miralles distinguish the instant case from *Trent* on the ground that Mr. Miralles' employer, a "charitable or public service organization" as defined in *W.Va. Code* § 29–12–5 [1996] (and under which statutory provision the Board was authorized to procure insurance for organizations liked the Center for Independent Living), is not a "political subdivision" under the Governmental Tort Claims Act, *see W.Va.Code* § 29–12A–3(c) [1986] (defining "political subdivision"), and thus, the provisions of the Act do not apply. *See State ex rel. Youth Services Systems, Inc. v. Wilson*, 204 W.Va. 637, 515 S.E.2d 594 (1999) (holding that private, non-

profit corporation that operated juvenile detention facility under contract with the state is not a "political subdivision" under Governmental Tort Claims Act and thus is not entitled to immunity under Act.). *See also Moats v. Preston County Comm'n*, 206 W.Va. 8, 15 n. 6, 521 S.E.2d 180, 187 n. 6 (1999) (concluding that private corporation which contracts with a state agency to provide mental health services may not claim immunity under Governmental Tort Claims Act.). Consequently, Mr. and Mrs. Miralles argue, the Act did not give the Board the discretionary authority to procure "custom-designed" insurance coverage for the Center for Independent Living which absolutely limited liability thereunder and which violated the provisions of this State's underinsured motorist laws. *See Trent*, at syl. pt. 1.

Upon careful review of the issues raised in this appeal, it is clear that the question of whether the workers' compensation exclusion precludes Mr. and Mrs. Miralles from receiving UIM benefits under the insurance policy covering the Center for Independent Living solely involves the interpretation of this exclusionary provision. Resolution of this issue does not require that we also determine whether the Board had the statutory authority to custom-design the subject policy. Therefore, we decline to resolve the latter issue in this opinion.

sured/underinsured motorist coverage in the commercial business auto policy covering the Center for Independent Living precludes Mr. and Mrs. Miralles from receiving UIM benefits for injuries Mr. Miralles sustained during the course of his employment as the result of the negligence of a third-party tortfeasor and for which injuries Mr. Miralles also received workers' compensation benefits. National Union argues (and the circuit court agreed) that the denial of UIM coverage in this case is dictated by this Court's decision in *Trent*, which involved similar facts and an insurance policy with a similar exclusion. *See* n. 7, *supra*. Importantly, however, we must acknowledge the fact that resolution of the instant case hinges on the language of the workers' compensation exclusion and whether it applies to an employee's UIM claim under his employer's insurance policy to compensate the employee for work-related injuries caused not by a co-employee or his employer, but by a third party. The omission, in *Trent*, of any analysis of (or argument regarding) [8] this exclusionary language in light of the crucial fact that the plaintiff employee in that case was injured by a third party does not alter our conclusion that the language of the workers' compensation exclusion does not preclude UIM coverage in this case.

As indicated above, pursuant to the disputed exclusionary language in the Center for Independent Living's business auto policy, uninsured and underinsured motorist coverage does not apply to:

[a]ny obligation for which the 'insured' may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

In *Henry v. Benyo*, 203 W.Va. 172, 506 S.E.2d 615 (1998), this Court examined comparable statutory language in the context of a similar factual scenario. Even though the disputed language in *Henry* was statutory rather than contractual, considering their parity, we are constrained to apply the plain meaning of the instant workers' compensation exclusion in a manner consistent with our holding in *Henry*.

In *Henry*, a construction company employee was injured in the course of his employment while operating a crane owned by his employer. The employee's injuries were caused by a third party, who had no employment relationship with the injured employee's employer. The injured employee received workers' compensation benefits as a result of his injuries. Additionally, the employee noticed his employer and its insurer that he intended to seek UIM benefits under the employer's motor vehicle insurance policy covering the crane on which he was injured in the event judgment against the third-party tortfeasor exceeded the limits of the tortfeasor's automobile insurance coverage.

Although the insurance policy at issue in *Henry* did not include a workers' compensation exclusion, the employer's insurer denied UIM coverage, *inter alia*, on the ground that, under the employer immunity provisions of this state's workers' compensation statutes, the injured employee was barred from seeking damages from his employer because he had received workers' compensation benefits.[9] This Court, in *Henry*, held that although UIM coverage would not be available to an employee who receives workers' compensation benefits for injuries caused by a co-employee, the employee could seek UIM coverage if his injuries were caused by

---

**8.** In upholding the workers' compensation exclusion in *Trent* as valid and enforceable, this Court omitted any meaningful analysis and discussion of the language involved; indeed, the injured employee in that case argued instead that the exclusionary language violated public policy. *See Trent*, 198 W.Va. at 608–09, 482 S.E.2d at 225–26.

**9.** *See* Syl. pt. 2, *Wisman v. William J. Rhodes & Shamblin Stone, Inc.*, 191 W.Va. 542, 447 S.E.2d 5 (1994) ("An employee who receives workers' compensation benefits for injuries that result from a motor vehicle collision with a coemployee which occurs within the course and scope of employment is not entitled to assert a claim for uninsured or underinsured motorist benefits. Because of the provisions for employer and coemployee immunity contained in W.Va.Code §§ 23–2–6 and 6a (1996), workers' compensation is the exclusive remedy available to an injured employee, and an uninsured or underinsured motorist carrier has no liability."); *W.Va.Code* § 23–2–6 [1994] ("Exemption of contributing employers from liability.")

a third-party tortfeasor. *Id.*, at syl. pt. 4. In so holding, we relied, in part, on the following statutory language:

> The provisions of subsections (a) and (b) of this section shall not apply to any policy of insurance to the extent that it covers *the liability of an employer to his employees under any workers' compensation law.*

*W.Va.Code* § 33–6–31(h) (Emphasis added). *See Henry*, 203 W.Va. at 177, 506 S.E.2d at 620. We explained in *Henry* that

> [t]he plain language of [W.Va.Code § 33–6–31(h)] prohibits an employee from collecting from his/her employer's underinsured motorist insurance coverage if his/her injuries are already covered by workers' compensation *and if the accident is a result of the employer's or a coemployee's actions (i.e., "the employer's liability")*. Stated otherwise, if the employee's injuries were caused by the employer, a coemployee, or, possibly, by some inadvertence of the employee him/herself (as compared to a third-party stranger to the employment relationship) *thereby rendering the employer 'liable,' or 'at fault,' for the accident, the employee cannot collect workers' compensation benefits and then seek an additional recovery from the employer just because the employer has motor vehicle insurance that coincidentally also covers the employee's injuries.* Rather, the employee is limited in his/her recovery to workers' compensation benefits because of the immunity provided to employers and coemployees by the workers' compensation statutes.

> \* \* \* \*

> *Where, however, an employee's work-related injuries are caused by a third-party . . . [W.Va.Code § 33–6–31(h)] does not apply because the employer is not 'liable' for the accident. In this scenario, it is the third-party who is technically 'at fault' for the collision and resultant damages.* Therefore, while the employee may recover workers' compensation benefits for his/her injuries resulting from the accident which occurred in the course and scope of his/her employment, he/she is not statutorily barred from also pursuing his/her claims against the third-party as this individual does not enjoy the immunity afforded by the workers' compensation statutes.

*Id.*, 203 W.Va. at 177–78, 506 S.E.2d at 620–21 (emphasis provided and added; footnote omitted).[10]

Just as in *Henry*, Mr. Miralles' work-related injuries were caused by a third party; consequently, Mr. Miralles' employer was not "liable," or otherwise "at fault," for the subject accident or for the resultant injuries. Therefore, because Mr. Miralles was injured by a third-party tortfeasor and the Center for Independent Living, Mr. Miralles' employer (the "insured"), was not "liable" for the subject accident and injuries under any workers' compensation law, the workers'

---

[10]. Also analogous to the instant case is *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza*, 210 W.Va. 63, 553 S.E.2d 257 (2001). In *Stage Show Pizza*, the plaintiff employee was seriously injured on the job and sued his employer for, *inter alia*, negligence because the employer had failed to pay workers' compensation premiums and was, therefore, not immune from negligence claims under the workers' compensation laws. At issue in that case was the commercial general liability insurance policy covering the employer. The policy included "stop gap" employer's liability coverage ("[w]e will pay for damages because of bodily injury to your employee for which the law holds you responsible and recovery is permitted by law"), as well as a workers' compensation exclusion ("[w]e do not cover: . . . any obligation for which you or any insurer may become liable under any workers' compensation . . . law"). *Id.*, 210 W.Va. at 66, 553 S.E.2d at 260. In syllabus points 4 and 5 of *Stage Show Pizza*, we held:

> 4. An insurance policy provision excluding coverage for 'an obligation of an employer under any workers' compensation law' means that coverage will not be available for an obligation that is imposed under a workers' compensation act that allows an employee to receive fixed benefits, without regard to the fault of any party, for a work-related injury.
> 5. A negligence cause of action against an employer by an employee injured in the course of and as a result of his employment, that is not barred by the immunity provisions of *W.Va.Code*, 23–2–6 [1991] because of the employer's default on its workers' compensation obligations, and against which the employer is prevented from asserting certain common-law defenses by *W.Va.Code*, 23–2–8 [1991], is not an obligation of an employer under a workers' compensation law for purposes of interpreting an insurance policy.

Thus, insurance coverage was available to the injured employee.

compensation exclusion does not apply.[11] Accordingly, the circuit court committed error in granting summary judgment in favor of National Union.

## B.

■ Finally, the remaining issues raised by National Union require further proceedings in the circuit court upon remand. First, National Union argues summary judgment was properly granted because the vehicle involved in the subject accident was Mr. Miralles' personal vehicle and thus, was not a covered "business auto" under the instant "business auto policy." *Brief of Appellee*, p. 16 at n. 9 (*quoting Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988) (" '[A] liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against.' ").).

Though National Union raised this issue before the circuit court, the court's December 4, 2002 summary judgment order did not resolve or otherwise address it. It has long been held by this Court that we " 'will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' " Syl. pt. 10, *Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678 (1997) (*quoting* syl. pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).). *See* Syl. pt. 4, in part, *DeVane v.*

*Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999) (This Court " " 'is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' " " (Internal citations omitted).). Thus, on remand, should National Union again raise the issue of whether Mr. Miralles' personal vehicle is a "covered auto" under the subject policy, the issue should be considered and resolved by the circuit court.

■ Additionally, on remand, the circuit court should address National Union's cross-assignment of error, that is, whether Mr. and Mrs. Miralles waived any claim to underinsured motorist benefits under the subject policy because they failed to obtain National Union's waiver of subrogation against the tortfeasor. According to National Union, Mr. and Mrs. Miralles provided to the Board a "Notice of Claim," which indicated the insurer of the third-party tortfeasor would offer to settle for the applicable policy limits; however, National Union argues, the notice provided did not also indicate that any potential settlement was to be "conditioned upon an underinsured motorist coverage carrier waiving its rights of subrogation against the tortfeasor," as required by *W.Va.Code* § 33–6–31e(a) [1998].[12] *See* Syl. pt. 3, *Arndt v.*

---

**11.** In similar factual scenarios, other courts have also found workers' compensation exclusions comparable to the instant one to be inapplicable. In *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo.1995), the plaintiff was struck by an underinsured passing motorist while sawing concrete joints in front of his employer's vehicle. The plaintiff sought underinsured motorist benefits under his employer's business auto coverage policy, which included a workers' compensation exclusion similar to the one at issue in the instant case. *See Id.*, at 100 ("This insurance does not apply to ... [a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers compensation ... law."). The Supreme Court of Colorado concluded that the UIM benefits the injured plaintiff was seeking from his employer's insurer

> substitute for benefits that [the injured employee] would have received from the motorist who caused his injuries. The benefits do not constitute workers' compensation benefits and do not result because of a suit brought by the [injured employee] against [his employer]. Be-

cause [the injured employee's] claim is based on the liability incurred by the driver who caused the accident, the exclusions do not apply to [the injured employee's] claim for UM/UIM benefits.

*Id.* (Footnote omitted) *See also Norris v. Nat. Union Fire Ins. Co.*, 326 Ill.App.3d 314, 260 Ill.Dec. 62, 760 N.E.2d 141, 149 (2001) (applying language identical to *McMichael, supra*, and concluding the exclusion would apply "if the insured was being sued by his own employee, since workers' compensation applies in that situation to give the injured party a recovery without the necessity of a showing of negligence.").

**12.** *W.Va.Code* § 33–6–31e(a) [1998] provides:

> (a) When an automobile liability insurer indemnifying a tortfeasor offers to pay its full policy limits of coverage for bodily injury or death to a claimant in a claim involving a motor vehicle accident, conditioned upon an underinsured motorist coverage carrier waiving its rights of subrogation against the tortfea-

*Burdette* 189 W.Va. 722, 434 S.E.2d 394 (1993) (An automobile policy's consent-to-settle provision regarding UIM coverage "whereby an insured voids his [UIM] coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent ... is a valid and enforceable means by which an insurer may protect its ... right to subrogat[ion][.]"). Indeed, National Union argues, it did not waive any subrogation rights it might have had based upon Mr. and Mrs. Miralles' claim for UIM coverage.

This issue was raised below but was neither addressed nor resolved by the circuit court in its December 4, 2002 order; therefore, this Court will not address it in this appeal. *See Vandevender*, at syl. pt. 10. However, we note that, on remand, to prevail on this issue, National Union is required to demonstrate that it has been prejudiced by Mr. and Mrs. Miralles' failure to obtain National Union's consent to settle with the tortfeasor's insurance carrier for the full limits of liability under the applicable policy. As we held in syllabus point seven of *Kronjaeger v. Buckeye Union Ins. Co.*, 200 W.Va. 570, 490 S.E.2d 657 (1997),

> Where an insured has failed to obtain his/her insurer's consent before settling with a tortfeasor but in settling has procured the full policy limits available under the tortfeasor's insurance policy, the insurer must show that it was prejudiced by its insured's failure to obtain its consent to settle in order to justify a refusal to pay underinsured motorist benefits.

## IV.

### CONCLUSION

For the reasons stated, the December 4, 2002 order of the Circuit Court of Monongalia County is reversed, and this case is remanded for further proceedings.

Reversed and remanded.

---

sor, then the claimant or the liability insurer indemnifying the tortfeasor may give to the underinsured motorist coverage carrier notice

in writing that an offer to settle for policy limits has been made by the liability insurer indemnifying the tortfeasor.