655 S.E.2d 83

**Yvonne REED and Kermit Reed, her husband, Plaintiffs Below, Appellants,**

v.

**Walter Jason ORME, Defendant Below, Appellee.**

No. 33291.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 2007.

Decided Nov. 8, 2007.

Michael A. Esposito, Logan, WV, for Appellants.

R. Carter Elkins, Andrew P. Ballard, for Appellee National Union Fire Insurance Company of Pittsburgh, PA.

PER CURIAM.

Appellants Yvonne E. Reed and Kermit E. Reed, her husband, appeal to this Court seeking reversal of an order entered by Circuit Court of Logan County on June 19, 2006. In that order, the circuit court found that underinsured motorist coverage did not exist under a policy of insurance issued to the State of West Virginia by Appellee National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") for injuries sustained by Ms. Reed in a June 5, 2001, automobile accident. The policy at issue names Ms. Reed's employer, the Logan County Board of Education (hereinafter the "Board"), as an additional insured. Upon considered review of the record before this Court, the arguments of the parties and applicable precedent, we affirm the lower court's ruling.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2001, Ms. Reed was involved in a motor vehicle accident with Walter Jason Orme while she was operating a school bus owned by the Board. As a result of injuries sustained in this automobile accident, Ms. Reed applied for and collected workers' compensation benefits because she was injured while working within the scope of her employment. Additionally, on June 4, 2003, Ms. Reed and her husband, Kermit Reed, initiated the underlying lawsuit in the Circuit Court of Logan County seeking compensation for injuries incurred as the result of Mr. Orme's negligence. On November 9, 2004, the Logan County Circuit Clerk issued a summons to National Union. Shortly thereafter, the summons and a copy of the complaint were served upon National Union placing it on notice of a potential claim for underinsured motorist benefits under its policy insuring the Board. At some point in time, not clear from the record before this Court, Appellants settled their claims against Mr. Orme for $25,000.00, the limits of his automobile liability insurance policy. As a result, the underlying action proceeded as a claim for underinsured motorist benefits under the National Union policy.

On March 23, 2006, National Union filed a motion for summary judgment before the circuit court arguing that Ms. Reed's receipt of workers' compensation benefits precludes recovery of underinsured motorists benefits under the terms of the policy. Specifically, National Union argued that the following exclusion, added by endorsement to the underinsured motorist coverage provisions, precluded Appellants' claim: "8. Any obligation for which the 'insured' may be held liable under any workers' compensation, [d]isability benefits or unemployment compensation law or any similar law." National Union argued that because the policy at issue was a custom-designed policy, this provision was valid and enforceable pursuant to this Court's prior decision in *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996), modified, *Gibson v.*

*Northfield Insurance Company,* 219 W.Va. 40, 631 S.E.2d 598 (2005), wherein this Court found that a virtually identical exclusion contained in the State's insurance policy precluded a claim for underinsured motorists benefits. *Trent,* 198 W.Va. at 609, 482 S.E.2d at 226. Admitting that the accident at issue occurred during the scope of Ms. Reed's employment, Appellants argued in response that summary judgment was inappropriate because this Court's decisions in *Henry v. Benyo,* 203 W.Va. 172, 506 S.E.2d 615(1998), and *Miralles v. Snoderly,* 216 W.Va. 91, 602 S.E.2d 534 (2004) (*per curiam*), permit the recovery of underinsured motorists coverage benefits afforded under an employer's policy of insurance where an employee while acting within the scope of employment is injured by a third-party.

By order dated June 19, 2006, the circuit court granted National Union's motion for summary judgment after full hearing. In that order, the circuit court specifically found that policy satisfied the custom-designed policy requirement of *Gibson* based upon the unopposed affidavit of Bob Mitts, an underwriting manager for the Board of Risk and Insurance Management ("BRIM"). The affidavit established that BRIM had caused the workers' compensation exclusion to be included in the policy after researching and investigating its need. Therefore, according to the circuit court, this Court's opinion in *Trent* controlled and the workers' compensation exclusion precluded underinsured motorist coverage for Appellants' claims arising from the June 5, 2001, accident. The circuit court rejected Appellants' arguments in opposition to the motion which relied upon *Henry* and *Miralles* by noting that the policy in *Henry* did not include a similar workers' compensation exclusion and that neither *Henry* nor *Miralles* involved a policy insuring a West Virginia political subdivision.

Appellants timely appealed the circuit court's summary judgment order to this Court. In their Petition for Appeal, Appellant's argued that the circuit court's decision was in error "because there existed genuine issues of material fact which precluded Summary Judgment and the facts of this case did not meet the criteria for the exception set forth in the insurance policy." By order dated January 10, 2007, we accepted this matter for review.

## II.

### STANDARD OF REVIEW

 The primary issue before this Court is whether the Circuit Court of Logan County properly granted summary judgment on the dispositive issue of whether underinsured motorist coverage existed under the National Union policy for the Appellants' claims.[1] It is well settled in this jurisdiction that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56(c) of the *West Virginia Rules of Civil Procedure,* summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." This Court has previously held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Further, it is well settled in this jurisdiction that the " '[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law.' Syllabus Point 1, *Tennant v. Smallwood,* 211 W.Va. 703, 568 S.E.2d 10 (2002)." Syl. Pt. 2, *Howe v. Howe,* 218 W.Va. 638, 625 S.E.2d 716 (2005). *See also Payne v. Weston,* 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995) ("The interpretation of an insurance contract ... is a legal determination which ... is reviewed *de novo* on appeal." (citation omitted)). With these principles in mind, we turn to the issues presented in this case.

1. Whether or not underinsured motorist coverage exists under the National Union policy is a dispositive issue in this matter because the claim must fail if coverage is found not to exist.

## III.

## DISCUSSION

■ On appeal, Appellants assign as error the grant of summary judgment where there existed genuine issues of material fact and that the facts of the case do not fall within the policy exclusion. However, careful examination of the Appellants' petition, appellate brief and the record created below indicate no disputed issues of fact.[2] To the contrary, Appellants have either admitted or failed to challenge all relevant factual matters and are, at best, attempting to argue that the circuit court misapplied the law. In their brief before this Court, Appellants admit that Ms. Reed was acting within the course and scope of her employment when she was injured in a motor vehicle accident and that she received workers' compensation benefits for the injuries she sustained in the subject accident. However, they argue that the receipt of workers' compensation benefits does not preclude coverage under the National Union policy pursuant to this Court's decisions in *Henry* and *Miralles*. Although the circuit court found that the policy at issue was a custom-designed policy such that *Gibson* and *Trent* controlled the coverage determination, Appellants do not address these cases nor the circuit court's determination that the policy was a custom-designed policy. In response, National Union argues that the circuit court decision should be upheld because no genuine issues of material fact exist and the circuit court correctly decided the coverage issue under the precedent of *Gibson* and *Trent*.

■ The mere assertion that there exists a "genuine issue of material fact" without a corresponding demonstration of what specific factual issues remain to be resolved is insufficient to avoid summary judgment. This is particularly true when the issue to be resolved is one of insurance coverage, which is a question of law where the facts are not in dispute. Our decisions interpreting and applying Rule 56 of the *West Virginia Rules of Civil Procedure,* which governs summary

judgment, demonstrate both the importance of its role in our litigation system and the parties' respective burdens regarding the same. As Justice Cleckley stated in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995),

> Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State. It is designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial, if there essentially is no real dispute as to salient facts or if it only involves a question of law. Indeed, it is one of the few safeguards in existence that prevent frivolous lawsuits from being tried which have survived a motion to dismiss. Its principal purpose is to isolate and dispose of meritless litigation.

*Williams,* 194 W.Va. at 58, 459 S.E.2d at 335 (internal quotations and citations omitted). Pursuant to Rule 56(e),

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In *Powderidge Unit Owners Association v. Highland Properties, Ltd.,* 196 W.Va. 692, 474 S.E.2d 872 (1996), Justice Cleckley discussed the parties' burdens relative to motions for summary judgment. Therein he stated:

> Under our summary judgment standard, a party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. This means the movant bears the initial responsibility of informing the circuit court of the basis of the motion and identifying those

---

2. Indeed, it is clear from a review of Appellants' arguments that they are not alleging a genuine issue of fact, but rather that the circuit court erred in its application of law. We take this

opportunity to caution counsel to specifically and accurately set forth the issue being appealed and not merely assert general error.

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. However, the movant does not need to negate the elements of claims on which the nonmoving party would bear the burden at trial.

The movant's burden is only [to] point to the absence of evidence supporting the nonmoving party's case. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant, however, does make this showing, the nonmovant must go beyond the pleadings and contradict the showing by pointing to specific facts demonstrating a "trialworthy" issue. To meet this burden, the nonmovant must identify specific facts in the record and articulate the precise manner in which that evidence supports its claims. As to material facts on which the nonmovant will bear the burden at trial, the nonmovant must come forward with evidence which will be sufficient to enable it to survive a motion for directed verdict at trial. If the nonmoving party fails to meet this burden, the motion for summary judgment *must be granted.*

*Powderidge,* 196 W.Va. at 698–9, 474 S.E.2d at 878–9 (internal quotations and citations omitted) (emphasis in original). Addressing the burden imposed by Rule 56 on a party opposing a summary judgment motion, we held in Syllabus Point 3 of *Williams that:*

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Williams.* "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Williams,* 194 W.Va. at 61, 459 S.E.2d at 338, *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986)(emphasis in original). As Justice Cleckley stated in *Williams,*

To be specific, the party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue. A "trialworthy" issue requires not only a "genuine" issue but also an issue that involves a "material" fact.

*Id.* at 60, 459 S.E.2d at 337 (internal citations omitted).

The only arguable issue of material fact potentially relevant to this appeal, though not raised by Appellants, is whether the circuit court correctly found that the policy qualified as a custom-designed policy under *Gibson.* In Syllabus Point 5 of *Gibson v. Northfield Insurance Company, et al.,* 219 W.Va. 40, 631 S.E.2d 598 (2005), this Court held:

An insurance company may incorporate limiting terms and conditions that violate *W. Va.Code,* 33–6–31 into a governmental entity's insurance policy. However, to be permissible under *W. Va.Code,* 29–12A–16(a) [2003], the limiting terms and conditions in the insurance policy must clearly be "determined by the political subdivision in its discretion." The limiting terms and conditions must herefore be the result of some choice, judgment, volition, wish or inclination as a result of investigation or reasoning by the governmental entity. The terms and conditions are not enforceable merely because they are different

from those found in the typical insurance policy. To the extent that *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996) says otherwise, it is modified.

In *Trent,* this Court had previously held that;

West Virginia Code § 29–12A–16(a) (1992) conveys broad discretion to both the West Virginia State Board of Risk and Insurance Management, as well as governmental entities, with regard to the type and amount of insurance to obtain. Consequently, when an insurer issues a custom-designed insurance policy to a governmental entity pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29–12A–1 to 23–12A–18 (1992), that entity may incorporate language absolutely limiting liability under the policy, even if such language would otherwise violate the provisions of West Virginia Code § 33–6–31(b) (1996).[3]

Syl.Pt 1, *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996) (footnote added). *See also* Syl. Pt. 4, *Gibson,* 219 W.Va. 40, 631 S.E.2d 598. Ultimately, the Court, in *Trent,* found that a workers' compensation exclusion virtually identical[4] to that at issue herein precluded underinsured motorist coverage under the State's policy of insurance[5] for a sheriff's deputy's claim where the deputy had also recovered workers' compensation benefits for the injuries sustained in an automobile acci-

dent. *Trent,* 198 W.Va. at 609, 482 S.E.2d at 226. The exclusion was found to be enforceable because the policy was custom-designed to insure a governmental entity which had the right to include terms in the policy absolutely limiting its liability even where those terms would otherwise violate W. Va.Code § 33–6–31(b). *Id.* Accordingly, if the policy at issue *sub judice* is a custom-designed policy, *Trent* controls and coverage is precluded for Appellants' claims.

 The National Union policy at issue herein was procured by BRIM pursuant to its authority under W. Va.Code § 29–12A–16(a)[6] to obtain insurance on behalf of political subdivisions. Instead of obtaining a separate insurance policy, the Board was added as an additional insured to the State's policy. Relying upon the unopposed affidavit of Bob Mitts, underwriting manager for BRIM, the circuit court found the affidavit clearly established that BRIM had investigated and researched the need for the workers' compensation exclusion and had caused its inclusion in the National Union policy. Therefore, *Gibson's* requirement that the policy be found to be custom-designed before provisions contrary to statutory requirements may be enforced was satisfied. We agree. Appellants have produced absolutely no evidence to refute the matters set forth in the Mitts' affidavit. A thorough review of the

**3.** West Virginia Code § 33–6–31(b) governs the inclusion of uninsured motorist coverage in automobile liability policies of insurance and the mandates the offer of an option for purchase of underinsured motorists coverage. West Virginia Code § 33–6–31(b) also includes the following provision which was at issue in *Trent* and is relevant to the instant appeal: "No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." *See Trent,* 198 W.Va. at 608, 482 S.E.2d at 225.

**4.** The exclusion at issue in *Trent* provided: "[t]his insurance does not apply to ... [a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under workers' compensation, disability benefits or unemployment compensation law or any similar law." *Trent,* 198 W.Va. at 608, 482 S.E.2d at 225.

**5.** Like the policy at issue herein, the policy in *Trent* was issued to the State and named a political subdivision, the Wyoming County Commis-

sion, as an additional insured. *Trent* 198 W.Va. at 603–4, 482 S.E.2d at 220–1.

**6.** W. Va.Code § 19–12A–16 (a) (2003), provides, in relevant part:

A political subdivision may use public funds to secure insurance with respect to its potential liability and that of its employees for damages in civil actions for injury, death or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees, including insurance procured through the state board of risk and insurance management. The insurance may be at the limits for the circumstances, and subject to the terms and conditions that are determined by the political subdivision in its discretion.

Though this provision was amended in 2003, after the procurement of the National Union policy at issue herein, the amendments were merely grammatical and do not impact the substantive provisions of this subsection which were in force at the time the National Union policy was obtained.

record below indicates that Appellants did not even attempt to argue that the National Union policy was not a custom-designed policy. Appellants made no attempt to demonstrate a genuine issue regarding this material fact by putting forth *any* evidence to contradict the Mitts' affidavit. As stated in *Williams*, a party may not oppose summary judgment by alleging the *mere existence* of a factual dispute, but must instead point to specific facts demonstrating a genuine issue of material fact worthy of being tried. *Williams*, 194 W.Va. at 60–1, 459 S.E.2d at 337–8. Appellants did not meet this burden and the circuit court did not err in finding that the National Union policy qualified as a "custom-designed" policy under *Gibson*.

Likewise, the circuit court did not err in finding the insurance coverage issue in this matter was controlled by this Court's prior decision in *Trent*. The question of insurance coverage when the facts are not in dispute is a question of law. Syl. Pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). In *Trent*, this Court previously found that a virtually identical workers' compensation exclusion contained within a custom-designed policy precluded coverage where the claimant had received workers' compensation benefits despite any argued conflict with the requirements of W. Va.Code § 33–6–31(b). *Trent*, 198 W.Va. at 609, 482 S.E.2d at 226. Under the undisputed facts of this case, our decision in *Trent* precludes coverage for Appellants' claims because the National Union policy qualifies as a custom-designed policy under *Gibson*.

Nor did the circuit court err in rejecting Appellants' reliance upon *Henry* and *Miralles* as both are easily distinguishable in light of the undisputed facts herein. *Henry* did not involve a policy issued to a governmental entity. The employer in *Henry* was a private construction company and the policy at issue therein *did not contain* a workers' compensation exclusion to underinsured mo-

torist coverage. *Henry*, 203 W.Va. at 174, 180, n. 9, 506 S.E.2d at 617, 623, n. 9. Instead, *Henry* was decided upon an analysis of the relationship between W. Va.Code § 33–6–31(h) [7] and W. Va.Code § 33–6–31(b). While *Miralles* did involve coverage under a BRIM procured policy, the insured employer was a charitable organization, not a political subdivision. *Miralles*, 216 W.Va. at 93–4, 602 S.E.2d at 536–7. The Court, in this *per curiam* opinion, explicitly declined to determine whether BRIM had the authority to procure a custom-designed policy for a nonpolitical subdivision such that *Trent* would control. *Miralles*, 216 W.Va. at 94–5, n. 7, 602 S.E.2d at 537–8, n. 7. Instead, the Court resolved the question under the precedent of *Henry*. *Id.* at 97, 602 S.E.2d at 540. Just as *Henry* is inapplicable to the instant matter, so is *Miralles*.

## IV.

## CONCLUSION

The Circuit Court of Logan County properly found that the National Union policy issued to the Board was a custom-designed policy such that this Court's decision in *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996), controls the resolution of this underinsured motorist coverage issue. Under the undisputed facts of this case, the workers' compensation exclusion in the National Union policy prohibits coverage for Appellants' claims. Accordingly, we affirm the Circuit Court of Logan County's June 19, 2006, order.

**Affirmed.**

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justices MAYNARD and ALBRIGHT concur and reserve the right to file concurring opinions.

---

7. The language of W. Va.Code § 33–6–31(h) at issue in *Henry*, stated "[t]he provisions of subsections (a) and (b) of this section shall not apply to any policy of insurance *to the extent that it covers the liability of an employer to his employees under any workers' compensation law.*" *Henry*, 203 W.Va. at 177, 506 S.E.2d at 620 (footnote omit-

ted) (emphasis in original). Explaining this provision, the Court indicates its plain language prohibited underinsured motorist coverage where the injuries at issue were covered by workers' compensation and sustained as a result of the employer's liability, *i.e.*, the employee's own actions or those of a co-employee. *Id.*

ALBRIGHT, Justice, concurring:

I concur with the result reached by the majority in upholding the trial court's grant of summary judgment based solely on Appellants' failure to submit any counter evidence to refute Appellees' evidence that the insurance policy at issue was a custom-designed policy. I write separately, however, to recognize a flaw in the majority's application of syllabus point five of *Gibson v. Northfield Insurance Co.*, 219 W.Va. 40, 631 S.E.2d 598 (2005). In relying on *Gibson* to enforce a workers' compensation exclusion in the subject insurance policy, the majority wrongly focused on the negotiating efforts of BRIM. The only evidence of a custom-designed policy in the record of this case was the affidavit of Bob Mitts, the underwriting manager for BRIM. The majority relies wholly on that affidavit, stating that it demonstrated that "BRIM had investigated and researched the need for the workers* compensation exclusion and had caused its inclusion in the National Union policy."

I submit that the custom-design evidence contemplated by syllabus point five of *Gibson* could not be fulfilled by the affidavit prepared by BRIM's underwriter. Even a cursory reading of *Gibson* demonstrates that the requisite evidence of a custom-designed policy must relate to the efforts on the part of a political subdivision, in this case, the Logan County Board of Education, to negotiate for specific policy exclusions.[1] That evidence is simply not present in this case. Because there is no evidence in the record of this case that demonstrates that the insured political subdivision at issue engaged in specific negotiations that resulted in a custom-designed policy, I respectfully disagree with the majority's conclusion that the workers' compensation exclusion contained in the National Union policy is enforceable under this Court's holding in *Gibson*.

1. In syllabus point five of *Gibson*, this Court made clear that because of the statutory language of West Virginia Code § 29–12A–16(a) which is written in terms of the action taken by a political subdivision, "[t]he limiting terms and conditions must ... be the result of some choice, judgment, volition, wish or inclination as a result of investigation or reasoning by the governmental entity." 219 W.Va. 40, 631 S.E.2d 598, syl. pt. 5, in part.

STARCHER, J., dissenting:

I dissent from the majority's opinion because it is an affront to police officers, sheriff's deputies, paramedics, firemen, school bus drivers, sanitation workers—and all other government employees who regularly drive for a living. Cities, counties and school boards across the State buy vehicle insurance to protect their employees from irresponsible drivers who have no insurance, or too little insurance. But the majority opinion says that very insurance, paid for with taxpayer dollars, is an illusion. The majority opinion says government employees injured on the job aren't entitled to the same protection as private employees or average citizens. And to create that reward for insurance companies, the majority opinion blithely misinterpreted state law.[1]

Everyone involved in this case—the plaintiffs, the insurance company, even the majority of this Court—concedes that the vehicle insurance policy in this case violates state law. *W. Va.Code*, 33–6–31(b) and (c) [1998] require every vehicle insurance policy to provide "any person ... who uses ... the motor vehicle to which the policy applies" with coverage that will pay the person "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." The same statute also requires insurance companies to offer the same coverage against motor vehicles with too little insurance to cover the injured person's damages ("underinsured" motor vehicle coverage). There is nothing in this statute that allows an insurance company to eliminate coverage if the injured person happens to receive workers' compensation.

Yet, in *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996), this Court decided that insurance companies could eliminate cover-

1. The misinterpretation was, unfortunately, with the unwitting assistance of the appellants' attorney. His brief—including the cover page, table of contents, and signature page—was only seven pitiful pages long. The totality of the law concerning uninsured motorist coverage was discussed in one sentence with two citations.

age, if a local government was buying the policy. We said that if a political subdivision bought a "custom-designed" policy with exclusions that contradicted *W. Va. Code*, 33–6–31, those exclusions were acceptable. In *Trent*, we concluded that a sheriff's deputy maimed in the line of duty when he was hit by an uninsured driver wasn't entitled to coverage.

Then, in *Gibson v. Northfield Insurance Company*, 219 W.Va. 40, 631 S.E.2d 598 (2005), we dramatically pulled back from our reasoning in *Trent v. Cook*. As the majority opinion notes, we agreed that a political subdivision could buy a "custom-designed" policy that was contrary to state insurance law requirements. However, we specified that a custom-designed policy had to be an honest-to-goodness, deliberative act on the part of the local government; the insurance company couldn't just slip exclusions in one part of the policy that eliminated coverage provided for in other parts of the policy. In *Gibson*, we struck down policy language that was contrary to state law, because there was no proof that the *political subdivision* deliberated and specifically chose the exclusion language when it paid for the policy.

The majority's opinion turns *Gibson* on its head. The majority opinion ignored the needs and wants of the political subdivision in this case—the Logan County Board of Education—and the employee of that subdivision, plaintiff Yvonne Reed. The clock has been turned back to the wild days that preceded *Gibson*—and any local government employee who drives a vehicle on the job will pay the price.

Just the other day, the newspapers carried a story of a local sheriff's deputy who—while out patrolling for drunk drivers—was injured when a drunk driver veered into his patrol cruiser. A typical citizen injured by a drunk driver would be entitled to uninsured and underinsured motorist insurance coverage. But, under the majority's opinion, this local sheriff's deputy is on his own and isn't entitled to any coverage under his employer's automobile insurance policy. The sheriffs deputy might get some help from workers'

compensation. But workers' compensation will only pay a small percentage of the deputy's wages—maybe enough to keep the wolves away from the door. If the deputy has to miss work for future doctor visits, he'll have to use his own sick leave or vacation time; workers' compensation doesn't pay for those losses. Assuming the deputy had the foresight to spend his hard-earned dollars to buy health insurance, he will at least have some freedom to choose the quality of his medical care. But, the deputy will be personally responsible for his co-pays and deductibles for his health insurance. As for remaining wages, future medical expenses, his pain, his suffering, his lost contributions to his pension and social security, his lost accrual of seniority toward promotion or retirement, the losses of his family, his future loss of income due to his injuries ... the majority opinion says those losses—all the result of an un- or under-insured drunk driver—aren't covered because the deputy had the misfortune of choosing to work in West Virginia.

This case isn't about a sheriff's deputy or a paramedic or a fireman. It's about a school bus driver. The last numbers I can find indicate that 2,800 bus drivers in West Virginia drove students almost 40 million miles in 1997–98, and were involved in at least 513 collisions.[2] The school bus drivers of West Virginia should take note that, with this decision, the members of the majority have assured that you and your families will have no protection if you are involved in an on-the-job collision with an un- or under-insured driver.

Of course, the majority opinion takes no responsibility for their actions. Instead, they place the blame on others. The Board of Risk and Insurance Management ("BRIM") is one culprit subject to blame, because one underwriting manager for BRIM said in an affidavit that someone at BRIM had "researched and investigated" and found a need to exclude people like school bus drivers from coverage.

I am baffled why any representative for BRIM-a government agency—would volun-

**2.** *See* West Virginia Department of Education, "West Virginia Education Department Receives

Commendations in Transportation Study," *http://wvde.state.wv.us/news/3/* (February 5, 1999).

tarily supply an affidavit to an insurance company saying the government or its employees aren't entitled to coverage under a government-purchased insurance policy. It has always been my understanding that BRIM was supposed to help local governments and state agencies get the best coverage possible for the best price. In this case, BRIM went out of its way to claim a local government paid premiums to get no coverage for its employees. It makes me wonder: who is BRIM working for? The government, or the insurance industry?

Furthermore, the insurance policy purchased in this case wasn't for BRIM's benefit, it was for the benefit of a political subdivision. Yvonne Reed's employer, the Logan County Board of Education, was the beneficiary of the policy and the governmental entity that paid the insurance premiums. Under Syllabus Point 5 of *Gibson v. Northfield Insurance Company, supra,* the fact that some low-level functionary at BRIM "researched and investigated" and decided to buy a policy that didn't really include any coverage is irrelevant. The question to ask is, did the political subdivision purchasing the policy—the Logan County Board of Education—determine, in its discretion, to buy a policy that limited the coverage available to school drivers? Did the Logan County Board of Education, as the result of some choice, judgment, volition, wish or inclination as a result of investigation or reasoning decide to buy coverage contrary to state law? The answer to that question isn't in the record, so summary judgment in favor of the insurance company was totally improper.

The Legislature is another party the majority implicitly blames for passing a law that allows political subdivisions to buy insurance policies that are contrary to state law. *W. Va.Code,* 29–12A–16 [2003] allows a political subdivision to buy an insurance policy with "terms and conditions that are determined by the political subdivision in its discretion." Again, I think everyone concedes that the vehicle insurance policy at issue in this case violates state law, because it provides less coverage than is mandated by *W. Va.Code,* 33–6–31. But the majority opinion blames everyone but itself by presuming, without

any real evidence, that the terms and conditions of the policy in this case were determined by the Logan County Board of Education in its discretion.

In sum, government employees who drive on the job should beware: because of the majority's opinion, if you're injured in a collision with an irresponsible driver with too little or no insurance, then you'll be the one paying the bill.

Accordingly, I dissent.

MAYNARD, Justice, concurring:

I am writing separately in order to emphasize that the majority's decision in this case is consistent with this Court's holdings in *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996) *and Gibson v. Northfield Insurance Co.,* 219 W.Va. 40, 631 S.E.2d 598 (2005). Rather than create a new benefit for state employees who use state-owned vehicles which the Legislature did not contemplate, the majority's decision recognizes that the Legislature has exempted custom-designed insurance policies issued to governmental entities from the requirements of the omnibus statute, W.Va.Code § 33–6–31 (1998). As long as the exclusions in such policies are bargained for and agreed upon by the governmental entity and the insurance company, they are valid even if they otherwise violate the provisions of the omnibus statute. Syllabus Point 5, *Gibson.*

In this case, the circuit court had before it the affidavit of the Board of Risk and Insurance Management ("BRIM") underwriter, Bob Mitts, which indicated that BRIM had investigated the terms of the subject insurance policy including the worker's compensation exclusion and had expressly chosen to include that exclusionary language during its negotiations with the insurance company. No evidence to dispute this affidavit was offered, and it is clear that the exclusion was included in the policy at the request of BRIM which negotiated and obtained the policy on behalf of the governmental entity, the Logan County Board of Education, pursuant to W.Va.Code § 19–12A–16(a) (2003). Consequently, the exclusion contained in the insurance policy at issue denying underinsured motorist coverage when workers' compensa-

tion benefits are available is valid and enforceable under this Court's decisions in *Trent* and *Gibson*.

In Syllabus Point 1 of *Trent*, this Court recognized that,

West Virginia Code § 29–12A–16(a) (1992) conveys broad discretion to both the West Virginia State Board of Risk and Insurance Management, as well as governmental entities, with regard to the type and amount of insurance to obtain. Consequently, when an insurer issues a custom-designed insurance policy to a governmental entity pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29–12A–1 to –18 (1992), that entity may incorporate language absolutely limiting liability under the policy, even if such language would otherwise violate the provisions of West Virginia Code § 33–6–31(b) (1996).

Clearly, BRIM employees such as Mr. Mitts have the statutory authority to limit the coverage available to state employees and anyone else using state-owned vehicles. It is not this Court's job to second guess the decisions that BRIM employees make pursuant to that statutory authority. In Syllabus Point 5·of *Gibson*, this Court held that any limiting terms and conditions included in such policies must be "the result of some choice, judgment, volition, wish or inclination as a result of investigation or reasoning by the governmental entity." Because the appellants produced absolutely no evidence to refute the matters set forth in the affidavit of Mr. Mitts, there is simply nothing suggesting that BRIM's decision to include the exclusionary language was not the result of an *honest-to-goodness* deliberative act on the part of the government entity.

The majority's decision in this case upholds the legislative policy of this State. Just as it would not be proper for this Court to take away benefits which the Legislature has chosen to provide to the hard-working employees of this State who travel the highways in state-owned vehicles, it would also be improper for this Court to create new benefits and impose new costs on governmental entities in contravention of W. Va.Code § 19–12A–16(a). As with all insurance, broader

coverage typically costs more. By allowing governmental entities to custom-design their own policies, the Legislature intended to place the ultimate decision of how much to pay and how many benefits to provide in the hands of those entities. In this case, BRIM chose not to provide underinsured motorist coverage for employees who are covered under workers' compensation. While I have sympathy for any state employee who is injured on the job, this Court has no authority to take away the discretion to negotiate the terms and conditions of state insurance policies which the Legislature expressly gave to BRIM. Accordingly, I concur with the majority's decision in this case.